ACCEPTED
03-13-00526-CV
3738137
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/12/2015 4:11:39 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00526-CV

_____

IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/12/2015 4:11:39 PM
JEFFREY D. KYLE
Clerk

_____

PHARMSERV, INC.

**APPELLANT,**

**v.**

TEXAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, AND
OFFICE OF THE INSPECTOR GENERAL OF THE TEXAS HEALTH AND
HUMAN SERVICES COMMISSION, DOUG WILSON
AND KYLE L. JANEK, M.D.

**APPELLEES.**

_____

**BRIEF *AMICUS CURIAE* OF SOUTHWEST PHARMACY SOLUTIONS
d/b/a AMERICAN PHARMACIES
IN SUPPORT OF THE APPELLANT**

_____

*On Appeal from the
261st Judicial District Court of Travis County, Texas
Cause No. D-1-GN-12-001074*

_____

**TAYLOR DUNHAM AND RODRIGUEZ, LLP**
301 CONGRESS AVENUE, SUITE 1050
AUSTIN, TEXAS 78701
(512) 473-2257  TELEPHONE
(512) 478-4409  FACSIMILE
MIGUEL S. RODRIGUEZ
STATE BAR NO. 24007938
MRODRIGUEZ@TAYLORDUNHAM.COM

**ATTORNEYS FOR SOUTHWEST PHARMACY
SOLUTIONS, INC. D/B/A AMERICAN
PHARMACIES**

## IDENTITY OF PARTIES AND COUNSEL

1.      **Petitioner/Appellant/Plaintiff**

Pharmserv, Inc.

*Represented by:*

Jeff Avant
Avant & Mitchell, L.P.
700 Lavaca, Suite 1400
Austin, Texas 78701
(512) 478-5757  Telephone
(512) 478-5404  Facsimile
avantlaw@swbell.net

        and

Hugh Barton
Hugh M. Barton, P.C.
603 West 13th St., Ste 1B
Austin, Texas 78701
(512) 499-0793  Telephone
(512) 727-6717  Facsimile
bartonlaw@yahoo.com

2.      **Respondents/Appellees/Defendants**

Texas Health and Human Services Commission
Office of Inspector General of the Texas Health and Human Services
Commission
Dr. Kyle Janak, Appellee, in his official capacity currently acting as
Executive Commissioner of the TxHHSC
Mr. Douglas Wilson, in his official capacity as Inspector
General of the Office of Inspector General Office of TxHHSC

*Represented by:*

i

Ann Hartley
Assistant Attorney General of the Financial,
Tax and Litigation Section or the Texas Office of the Attorney
General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1313  Telephone
(512) 477-2348  Facsimile
ann.hartley@texasattorneygeneral.gov


**3.** *Amicus Curiae*

Southwest Pharmacy Solutions, Inc. d/b/a American Pharmacies

*Represented by:*

Miguel S. Rodriguez
Taylor Dunham and Rodriguez, LLP
301 Congress Avenue, Suite 1050
Austin, Texas 78701
(512) 473-2257  Telephone
(512) 478-4409  Facsimile
mrodriguez@taylordunham.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..........................................................i

TABLE OF CONTENTS.................................................................... iii

INDEX OF AUTHORITIES.................................................................iv

INTEREST OF *AMICUS CURIAE*................................................................1

SUMMARY OF THE ARGUMENT ...........................................................2

ARGUMENT ...................................................................................4

CONCLUSION ...................................................................................8

CERTIFICATE OF COMPLIANCE...................................................9

CERTIFICATE OF SERVICE ...............................................................9

APPENDIX ...................................................................................10

# INDEX OF AUTHORITIES

Page(s)

**Statutes**

TEX. GOV'T CODE § 2001.003(1) ................................................................6

TEX. GOV'T CODE § 2001.171 ..................................................................6

**Rules**

1 TEX. ADMIN. CODE § 371.1601(18) (eff. 1/9/2005) ................................6

1 TEX. ADMIN. CODE § 371.1601(33) (eff. 1/9/2005) ................................7

1 TEX. ADMIN. CODE § 371.1601(41) (eff. 1/9/2005) ................................6

1 TEX. ADMIN. CODE § 371.1601(45) (eff. 1/9/2005) ................................4

1 TEX. ADMIN. CODE § 371.1603(f) (eff. 1/9/2005) .................................7

1 TEX. ADMIN. CODE § 371.1603(j)(2) (eff. 1/9/2005) ..............................5

1 TEX. ADMIN. CODE § 371.1613 (eff. 1/9/2005) .....................................7

1 TEX. ADMIN. CODE § 371.1643(c) (eff. 1/9/2005) .................................5

1 TEX. ADMIN. CODE § 371.1647(c) and (d)(5) (eff. 1/9/2005) ...............6

1 TEX. ADMIN. CODE § 371.1667(a) (eff. 1/9/2005) .................................6

1 TEX. ADMIN. CODE § 371.1667(b) (eff. 1/9/2005) .................................6

1 TEX. ADMIN. CODE § 371.1669(a) (eff. 1/9/2005) .................................6

1 TEX. ADMIN. CODE § 371.1709(h) (eff. 4/10/11) ..................................7

1 TEX. ADMIN. CODE § 371.1719(d)(4) (eff. 4/10/11) ..............................7

## INTEREST OF *AMICUS CURIAE*

American Pharmacies is a for-profit, member-owned, independent pharmacy cooperative with over 600 members operating in several states, including Texas. PharmServ, Inc. is one of American Pharmacies' members. The vast majority of the members of American Pharmacies are pharmacy providers in the Texas Medicaid Vendor Drug Program overseen by the Texas Health and Human Services Commission ("HHSC"). From time to time, many of the pharmacy providers who are members of American Pharmacies are the subject of audits by the HHSC Office of Inspector General ("HHSC-OIG") and, in some cases, the HHSC-OIG seeks recoupment for alleged overpayments. Many of those recoupment allegations include the use of a sampling process to extrapolate the findings of an audit across a population of unaudited claims.

American Pharmacies devotes significant resources to advocating in the legislature and the courts of Texas to advance and protect the interests of its member-pharmacies. American Pharmacies has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

This brief is being submitted in support of Appellant.

American Pharmacies is the source of all fees paid or to be paid for preparing this brief.

## SUMMARY OF THE ARGUMENT

American Pharmacies respectfully submits this brief as a friend of the Court to bring to the Court's attention an area of analysis not closely focused upon by the parties to this appeal.

The members of American Pharmacies, a purchasing cooperative, are independent pharmacies. These are small businesses, often owned by the pharmacist behind the counter. They stand ready to serve their community and are an integral component of the delivery of health care services. Appellant is just one of hundreds of other independently-owned small-business pharmacies in Texas serving the Medicaid population. The HHSC-OIG audits of these pharmacies often identify small clerical errors on a script (a missing date, word or notation) that most often do not question the fact that a patient received the correct medication and that the State was billed the correct amount for the quantity of medication dispensed to the patient. Therefore, the "overpayments" imposed as sanctions act to recoup money from the pharmacy even though the pharmacy has already unquestionably provided medicine to the patient. As a result, the pharmacy is left without its inventory and its revenue.

However, the imposition of monetary sanctions of hundreds of thousands of dollars or more (as a result of extrapolated findings from a sampling process) is, in most cases, a death sentence to such a business. The HHSC regulations in effect in

2010, the time that HHSC imposed its administrative sanctions upon Appellant, provided that Medicaid providers such as Appellant would be afforded due process.

The thrust of the argument of HHSC-OIG is that it may impose an administrative sanction upon Appellant but give the sanction a different label to avoid providing the required due process.

However, HHSC-OIG's demand for nearly $1 million in payments from Appellant and the imposition of a hold on any future payments to Appellant is within the direct ambit of the definition of an "administrative sanction" set forth in the regulations applicable to Appellant at the time of their imposition in 2010.

Whether HHSC-OIG's demand for the return of such amounts is the result of a claim of fraud or clerical error is of no moment in the analysis. The regulations plainly state that demands for recoupment of overpayments, including the withholding of future payments, are administrative sanctions which require a right of a formal appeal hearing to be afforded to the provider prior to their imposition.

The requirement to provide such due process protections is important not just to the Appellant in this case, but to the hundreds of other small business pharmacies subject to audit by HHSC-OIG.

Because HHSC-OIG's duty to provide a right to a formal appeal hearing and judicial review is nondiscretionary, jurisdiction exists to compel such forms of due process.

## ARGUMENT

**A.    In 2010, HHSC-OIG Imposed "Administrative Sanctions" Upon Appellant.**

As reflected in the record, on October 13, 2010, HHSC-OIG declared that "[a]fter summarizing the audit exceptions and extrapolating to the population (the error rate and amounts) the Office of the Inspector General determined that the Vendor owes the State of Texas $900.916.96." (Clerk's Record at page 40). In its letter, HHSC-OIG (1) demanded payment in the amount of $900,916.96 within thirty days and (2) indicated that a hold would be placed on the Appellant's claims if payment was not received by the due date or a payment plan could not be agreed upon. (Clerk's Record at pages 57-58). In other words, by this letter, HHSC-OIG was seeking recoupment of $900,916.96 in alleged overpayments and instituting a payment hold on future payments to the Pharmacy.

The regulations in effect at the time defined such a demand for payment and utilization of a hold on payment as "administrative sanctions" subject to an entitlement to due process.

Specifically, the demand for payment of $900,916.96 and hold on future payments constituted a "recoupment of overpayment." *See* 1 TEX. ADMIN. CODE §

4

371.1601(45) (eff. 1/9/2005) (emphasis added) (defining a "recoupment of overpayment" as a "sanction imposed to recover funds paid to the provider or person to which they were not entitled" and describing the recoupment as either being taken in a lump sum, monthly payments or a reduction of payments to the provider, in full or in part).

The regulations further provided that a recoupment of overpayments, including a "recoupment of overpayments projected from a sampling process" (as was performed in this case), are "administrative sanctions." *See* 1 TEX. ADMIN. CODE § 371.1643(c) (eff. 1/9/2005).

**B.**    **In 2010, the Imposition of Administrative Sanctions Triggered Due Process Rights Including an Opportunity for a "Formal Appeal Hearing."**

HHSC's regulations in effect in 2010 recognized the seriousness of the power given to HHSC-OIG to impose sanctions on a provider. As a result, the same regulations which granted HHSC-OIG such power also required that the provider be afforded due process notice and hearing requirements.

> (2)Sanctions – Sanctions may directly impact a person's ability to keep or receive payments and/or the person's participation in the Medicaid program; e.g., exclusion from program participation, **recoupment of overpayments, or payment hold. Imposition of sanctions triggers due process notice and hearing requirements.**

1 TEX. ADMIN. CODE § 371.1603(j)(2) (eff. 1/9/2005) (emphasis added).

5

The Inspector General affords, **to any provider**[1] or person against whom it imposes sanctions, all administrative and judicial due process remedies applicable to **administrative sanctions**.

1 TEX. ADMIN. CODE § 371.1667(a) (eff. 1/9/2005) (emphasis added). Upon the Inspector General's final determination of a sanction against a provider, such as a pharmacy, the Inspector General must provide written notice to the provider of its right to a formal appeal hearing. 1 TEX. ADMIN. CODE § 371.1647(c) and (d)(5) (eff. 1/9/2005).

"The provider . . . may choose to request an informal review, a formal appeal hearing, or both." 1 TEX. ADMIN. CODE § 371.1667(b) (eff. 1/9/2005).[2] This "formal appeal hearing" clearly sets forth the type of "contested case" subject to the procedural requirements of the Administrative Procedures Act. TEX. GOV'T CODE § 2001.003(1). Moreover, the resolution of such a contested case would afford the provider an opportunity for judicial review. TEX. GOV'T CODE §2001.171.[3]

---

[1] Pharmacies in the Vendor Drug Program meet the definition of "providers" under Subchapter G. 1 TEX. ADMIN. CODE § 371.1601(41) (eff. 1/9/2005) (defining "provider" as including person providing services to an HHS agency); 1 TEX. ADMIN. CODE § 371.1601(18) (eff. 1/9/2005) (defining "HHS" as including the Commission and any other program or division under the Commission's umbrella).

[2] Upon receiving a provider's notice of appeal, the Inspector General must then "forward the notice of appeal to the Commission's Office of General Counsel for docketing." 1 TEX. ADMIN. CODE § 371.1669(a) (eff. 1/9/2005).

[3] This amicus brief focuses on the regulations in effect at the time that HHSC-OIG issued its administrative sanction against Appellant. The regulations in effect today likewise provide

**C.  A Right to Formal Appeal Hearing Does Not Require an Allegation of Fraud.**

The right to appeal an administrative sanction is not dependent on an allegation of fraud.  *See* 1 TEX. ADMIN. CODE § 371.1601(33) (eff. 1/9/2005) ("Any funds received greater than that to which the provider is entitled, whether obtained through error, misunderstanding, abuse, or fraud is considered to be an overpayment"); *see also* 1 TEX. ADMIN. CODE § 371.1603(f) (eff. 1/9/2005) ("Not all actions resulting in overpayment to a provider are necessarily fraudulent."); 1 TEX. ADMIN. CODE § 371.1613 (eff. 1/9/2005) ("Unintentional program violations are subject to administrative actions and sanctions.").  Most program violations which result in an allegation of overpayment do not result in the pharmacy provider receiving more compensation than was otherwise due.  For example, often HHSC-OIG makes a claim for overpayment as a result of a prescription not being dated, a telephonic refill not being noted on the original prescription, or a quantity not being written on the prescription in both word and numeric form (i.e., "thirty (30) tablets").  Each of these types of alleged errors do not result in the patient receiving more medicine than he or she should have or the pharmacy being paid more than it should have.  However, HHSC-OIG still claims each to be an "overpayment."

---

for due process through notice and a formal hearing.  *See* 1 TEX. ADMIN. CODE § 371.1719(d)(4) and its predecessor 1 TEX. ADMIN. CODE § 371.1709(h) (eff. 4/10/11).

7

Therefore, it is not sufficient to claim that only those charged with fraud may obtain an informal appeal hearing.

## CONCLUSION

For the foregoing reasons, *Amicus* American Pharmacies respectfully requests that the Court receive this brief and consider the arguments raised herein.

Respectfully submitted,

**TAYLOR DUNHAM AND RODRIGUEZ, LLP**
301 Congress Avenue, Suite 1050
Austin, Texas 78701
Telephone: (512) 473-2257
Telecopier: (512) 478-4409


By: /s/ Miguel S. Rodriguez
     Miguel S. Rodriguez
     State Bar No. 24007938
     mrodriguez@taylordunham.com

**ATTORNEYS FOR SOUTHWEST PHARMACY SOLUTIONS, INC. d/b/a AMERICAN PHARMACIES**

## CERTIFICATE OF COMPLIANCE

In compliance with T.R.A.P. 9.4(i)(2), this brief contains 1,602 words, excluding the portions of the brief exempted by Rule 9.4(i)(l).

/s/ Miguel S. Rodriguez
Miguel S. Rodriguez

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served on all counsel of record by delivering a true and correct copy via electronic service and U.S. First Class Mail on this the 12th day of January, 2015, as follows:

Jeff Avant
Avant & Mitchell, L.P.
700 Lavaca, Suite 1400
Austin, Texas 78701
(512) 478-5757  Telephone
(512) 478-5404  Facsimile
avantlaw@swbell.net

and

Hugh Barton
Hugh M. Barton, P.C.
603 West 13th St., Ste 1B
Austin, Texas 78701
(512) 499-0793  Telephone
(512) 727-6717  Facsimile
bartonlaw@yahoo.com

*Attorneys for Appellant*

Ann Hartley
Assistant Attorney General of the Financial,
Tax and Litigation Section or the Texas Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1313  Telephone
(512) 477-2348  Facsimile
ann.hartley@texasattorneygeneral.gov

*Attorneys for Appellees*

/s/ Miguel S. Rodriguez
Miguel S. Rodriguez

9

# APPENDIX

Tab 1      1 TEX. ADMIN. CODE § 371.1601 (eff. 1/9/2005)

Tab 2      1 TEX. ADMIN. CODE § 371.1603 (eff. 1/9/2005)

Tab 3      1 TEX. ADMIN. CODE § 371.1613 (eff. 1/9/2005)

Tab 4      1 TEX. ADMIN. CODE § 371.1643 (eff. 1/9/2005)

Tab 5      1 TEX. ADMIN. CODE § 371.1647 (eff. 1/9/2005)

Tab 6      1 TEX. ADMIN. CODE § 371.1667 (eff. 1/9/2005)

Tab 7      1 TEX. ADMIN. CODE § 371.1669 (eff. 1/9/2005)

# APPENDIX

## Tab 1

## 1 TEX. ADMIN. CODE § 371.1601 (eff. 1/9/2005)

<<Back

# Historical Rule for the Texas Administrative Code

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 1 | FRAUD OR ABUSE AND ADMINISTRATIVE ENFORCEMENT INVOLVING MEDICAID AND OTHER HEALTH AND HUMAN SERVICES PROGRAMS |
| RULE §371.1601 | Definitions |
| Repealed Date: | **10/14/2012** |

The following words and terms, when used in this subchapter, shall have the following meanings, unless the context clearly indicates otherwise.

  (1) Abuse--Practices that are inconsistent with sound fiscal, business, or medical practices and that result in unnecessary program cost or in reimbursement for services that are not medically necessary; do not meet professionally recognized standards for health care; or do not meet standards required by contract, statute, regulation, previously sent interpretations of any of the items listed, or authorized governmental explanations of any of the foregoing.

  (2) Affiliates--Persons associated with one another so that any one of them directly or indirectly controls or has the power to control another in whole or in part or meets any portion of the definition for "Affiliate Relationship" established at §371.1643 of this subchapter relating to Use of Sanctions.

  (3) Agent--Any person, company, firm, corporation, employee, independent contractor, or other entity or association legally acting for or in the place of another person or entity.

  (4) At the time of the request--A requirement to produce requested records immediately upon request and without delay.

  (5) CHIP--Children's Health Insurance Program.

  (6) Claim--Requests for payment or reimbursement related to services or items delivered within the Medicaid or other HHS programs, which are submitted by a provider to the Medicaid or other HHS program claims administrator or an operating agency either directly by a provider or indirectly through a managed care organization.

  (7) Claims Administrator--The entity designated by an operating agency to process and pay Medicaid provider claims.

  (8) Closed-end Contract--A contract or provider agreement for a specific period of time. It may include any specific requirements or provisions deemed necessary by the Inspector General to ensure the protection of the program. It must be renewed for the provider to continue to participate in the Medicaid

or other HHS program.

(9) Commission--The Texas Health and Human Services Commission.

(10) Controlled substances--"Controlled substance" as defined by the Texas Controlled Substances Act (Texas Health and Safety Code, Chapter 481) or its successor and the Federal Controlled Substances Act (21 USCA §8.01 et seq.) or its successor.

(11) Conviction or convicted--A person is considered to have been convicted when:

(A) A judgment of conviction has been entered against an individual or entity by a federal, state, or local court, regardless of whether:

(i) There is a post-trial motion or an appeal pending, or

(ii) The judgment of conviction or other record relating to the criminal conduct has been expunged or otherwise removed;

(B) A federal, state, or local court has made a finding of guilty against an individual or entity;

(C) A federal, state, or local court has accepted a plea of guilty or nolo contendere by an individual or entity; or

(D) An individual or entity has entered into participation in a first offender, deferred adjudication or other program or arrangement where judgment of conviction has been withheld.

(12) Exclusion--Means that items or services furnished, ordered, or prescribed by a specified individual or entity will not be reimbursed under Medicare, Medicaid and all other state health and human services programs until the individual or entity is reinstated by the Inspector General. When excluded, any provider participation contract/agreement with the excluded person or in which the excluded person is affiliated that entitles that person to participate as a provider or contractor, due to the enrollment process, is canceled. The cancellation would not apply to any settlement agreements or agreements for other purposes that were signed by the provider or contractor. An excluded provider ceases to be a "provider", as defined in this section, upon the effective date of their exclusion, thus for purposes of this subchapter, they become a "person", as defined in this section.

(13) Failure to grant immediate access--The failure to grant access to records, documents, or premises, upon reasonable request and as requested, for the purpose of reviewing, examining, and securing custody of records, access to, disclosure of, and custody of copies or originals of any records, documents, or other requested items, and others specified in §371.1643(f) of this subchapter, as determined necessary by the Inspector General or those specified in §371.1643(f) of this subchapter to perform statutory functions. Further definition and clarification is provided in §371.1643(f) and §371.1617(2) of this subchapter.

(14) False statement or misrepresentation--Any statement or representation that is inaccurate, incomplete, or not true.

(15) Federal financial participation (FFP)--The federal government's share of a state's expenditures under the Medicaid and other HHS programs and other benefit programs.

(16) Fraud--Any act that constitutes fraud under applicable federal or state law, including any intentional deception or misrepresentation made by a person with the knowledge that the deception

could result in some unauthorized benefit to that person or some other person.

  (17) Health Maintenance Organization (HMO)--A public or private organization organized under state law that is a federally qualified HMO or that meets the definition of HMO within this state's Medicaid plan.

  (18) HHS--A health and human service agency under the umbrella of the Health and Human Services Commission (the Commission), including the Commission, a program or service provided under the authority of the Commission or a health and human service agency, including those agencies delineated in §531.001.

  (19) Immediate Access--Is deemed to include the provisions established by §371.1617(2) and §371.1643(f) of this subchapter.

  (20) Immediate family member--A person's spouse (husband or wife); natural or adoptive parent; child or sibling; stepparent, stepchild, stepbrother or stepsister; father-, mother-, daughter-, son-, brother- or sister-in-law; grandparent or grandchild; or spouse of a grandparent or grandchild.

  (21) Indirect ownership interest--Includes an ownership interest through any other entities that ultimately have an ownership interest in the provider or person, as defined in this section, at issue. (For example, an individual has a 10 percent ownership interest in the entity at issue if they have a 20 percent ownership interest in a corporation that wholly owns a subsidiary that is a 50 percent owner of the entity at issue.)

  (22) Inducement--An attempt to entice or lure an action on the part of another in exchange for, without limitation, a service, cash in any amount, entertainment, or any item of value.

  (23) Inpatient institutional services--Inpatient services provided by hospitals and long-term care facilities.

  (24) Licensing authority adverse action--Any action by a state or federal licensing entity (including other similar authority) against conduct that adversely affects the status of the license. Action includes revocation or suspension of a license as well as reprimand, censure, or probation.

  (25) Managed Care Organization (MCO)--Any person that is authorized or otherwise permitted by law to arrange for or provide a managed care plan.

  (26) Managed Care Plan--A plan under which a person undertakes to provide, arrange for, pay for, or reimburse any part of the cost of any health care service. A part of the plan must consist of arranging for or providing health care services on a prepaid basis through insurance or otherwise, as distinguished from indemnification against the cost of those services.

  (27) Medicaid Fraud Control Unit (MFCU)--The division within the attorney general's office that is responsible for investigating suspected Medicaid provider fraud and physical abuse or neglect of patients in institutional settings.

  (28) Medicaid Provider Integrity Division (MPI)--The division within the Commission's Office of Inspector General (OIG) that investigates provider or contractor fraud and abuse in Medicaid and other HHS programs.

  (29) Member of Household--With respect to a person, as defined in this section, with whom they are sharing a common abode as part of a single-family unit, including domestic employees, partners, and

others who live together as a family unit.

(30) Office of Inspector General (OIG)--The office within the Commission responsible for the investigation of fraud and abuse and with ensuring program integrity within the Texas Medicaid program and other health and human services provided by the state and the enforcement of state law relating to the provision of those services.

(31) Open-end Provider Agreement--An agreement that has no specific termination date and continues in force as long as both parties agree.

(32) Operating agency--A state agency that operates any part of the Texas Medicaid or other HHS program.

(33) Overpayment--The amount paid by Medicaid or other HHS program to a provider or person that exceeds the amount to which the provider or person is entitled under §1902 of the Social Security Act or other state or federal statutes for a service or item furnished within the Medicaid or other HHS programs, and that is required to be refunded under §1903 of the Social Security Act or any other statute. This also includes all overpayments specified in division 5 of this subchapter. Any funds received greater than that to which the provider is entitled, whether obtained through error, misunderstanding, abuse, or fraud is considered to be an overpayment.

(34) Ownership interest--An interest in the capital, the stock or the profits of the entity or any mortgage, deed, trust or note, or other obligation secured in whole or in part by the property or assets of the person, as defined in this section.

(35) Payment Hold (Suspension of Payments)--An administrative sanction that withholds all or any portion of payments due a provider until the matter in dispute, including all investigation and legal proceedings, between the provider and the Commission or an operating agency or its agent(s) are resolved. This is a temporary denial of reimbursement under the Medicaid or other HHS program for items or services furnished by a specified provider.

(36) Person--An individual, firm, association, partnership, corporation, agency, institution, or other organization or legal entity.

(37) Probationary Contract--A contract or provider agreement for any period of time. It may include any special requirements or provisions deemed necessary by the Inspector General to ensure the protection of the program. It must be renewed by the Inspector General for the provider to continue to participate in the program.

(38) Practitioner--A physician or other individual licensed or certified under state law to practice their profession.

(39) Professionally Recognized Standards of Health Care--Statewide or national standards of care, whether in writing or not, that professional peers of the individual or entity whose provision of care is an issue, recognize as applying to those peers practicing or providing care within the State of Texas. When the Food and Drug Administration (FDA), the Centers for Medicare and Medicaid Services (CMS), or the Public Health Service (PHS), has declared a treatment modality not to be safe and effective, persons who employ such a treatment modality will be deemed not to meet professionally recognized standards of health care. This definition shall not be construed to mean that all other treatments meet professionally recognized standards.

(40) Program Violation--A failure to comply with a Medicaid or other HHS provider contract or

agreement, the Texas Medicaid Provider Procedures Manual or other official program publications or any state or federal statute or regulation applicable to the Texas Medicaid or other HHS program, including any official written explanation or interpretation of the above. Fraud and abuse are program violations, but not all program violations are included in fraud and abuse. Program violations are delineated in §371.1617 of this subchapter (relating to Program Violations).

(41) Provider--

(A) Any person or legal entity, including a managed care organization and their subcontractors, furnishing Medicaid or other HHS services under a provider agreement or contract in force with a Medicaid or other HHS operating agency, and who has a provider number issued by the Commission or by any HHS agency or program or their designee to:

(i) provide medical assistance, Medicaid, or any other HHS service in any HHS program under contract or provider agreement with the Commission, its designee, or a health and human service agency; or

(ii) provide third-party billing services under a contract or provider agreement with the Commission or its designee.

(B) An excluded provider ceases to be a "provider," as defined in this section, upon the effective date of their exclusion, thus for purposes of this subchapter, they become a "person", as defined in this section.

(42) Provisional Contract--A contract or provider agreement for any period of time. It may include any special requirements or provisions deemed necessary by the Inspector General to ensure the protection of the program. It must be renewed by the Inspector General for the provider to continue to participate in the program.

Cont'd...

Next Page          Previous Page

| HOME | TEXAS REGISTER | TEXAS ADMINISTRATIVE CODE | OPEN MEETINGS |

<<Back

# Historical Rule for the Texas Administrative Code

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 1 | FRAUD OR ABUSE AND ADMINISTRATIVE ENFORCEMENT INVOLVING MEDICAID AND OTHER HEALTH AND HUMAN SERVICES PROGRAMS |
| RULE §371.1601 | Definitions |
| Repealed Date: | **10/14/2012** |

  (43) Reasonable request--A request for the provider or person to provide original records and documents, or copies of original records and documents, or access to records, documents, or premises, as specified in §371.1643(f) of this subchapter, made by a properly identified agent of the Commission or another state or federal agency identified in §371.1643(f) of this subchapter, during hours that the business or premises is open for business.

  (44) Recipient--A person eligible for and covered by the Medicaid or any other HHS program.

  (45) Recoupment of overpayment--A sanction imposed to recover funds paid to the provider or person to which they were not entitled. Recoupment of overpayments may be accomplished through a lump sum or monthly payments by the provider or person to the Inspector General or, with the approval of the Inspector General, a provider's or person's payments may be reduced by a percentage, up to 100% of payments, to apply the unpaid funds to offset the overpayment owed. The recoupment will apply to all previously submitted, pending, and subsequently submitted claims to offset overpayments previously made to the provider or person. Some HHS programs may not have the full range of recoupment options.

  (46) Requesting Agency--A governmental agency (or its authorized representative or agent) that is authorized to review and reasonably is asking to see a provider's documentation or records or that is directed or otherwise authorized by federal or state statute to review medical records and/or other documentation that providers must maintain and disclose to such agencies in order to participate in the or other HHS program and records and documents necessary for the Office of Inspector General to fulfill its statutory mandates to review and investigate providers and persons for fraud and abuse; e.g., the Commission, the relevant operating agency, Texas Attorney General's Medicaid Fraud Control Unit, U.S. Department of Health and Human Services. See also the definition for "Reasonable Request" listed in paragraph (43) of this section.

  (47) Restricted reimbursement--An administrative sanction that limits or denies payment of a provider's Medicaid or other HHS program claims for specific procedures for a specified time period for services that the provider has abused or has billed inappropriately. The provider may be eligible to be paid for certain other services.

  (48) Services--The types of medical assistance specified in section 1905(a) of the Social Security Act

(42 U.S.C. §1396d (a)) and other HHS program services authorized under federal and state statutes that are administered by the Commission and other HHS agencies.

(49) Social Security Act--Legislation passed by Congress in 1965 that established the Medicaid program under Title XIX and created, in the same legislation, the Medicare program under Title XVIII.

(50) Solicitation--Offering to pay or agreeing to accept, directly or indirectly, overtly or covertly any remuneration in cash or in kind to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered or enrolled as a provider or otherwise by a state health care regulatory or health and human service agency.

(51) State health care program--Any program that has:

(A) A state plan approved under Title XIX of the Social Security Act (Medicaid);

(B) Any program receiving funds under Title V of the Act or from an allotment to a State under such title (Maternal and Child Health Services Block Grant program); or

(C) Any program receiving funds under Title XX of the Act or from any allotment to a State under such title (Block Grants to States for Social Services).

(52) Subcontractor--Means:

(A) an individual, agency or organization to which a disclosing entity (provider) has contracted or delegated some of its management functions or responsibilities of providing medical care or other services to its patients or recipients; or

(B) an individual, agency or organization with which a fiscal agent has entered into a contract, agreement, purchase order, or lease to obtain space, equipment, or services provided under the Medicaid or other HHS agreement or contract.

(53) Suspension of payments (payment hold)--The withholding of all or any portion of payments for items or services furnished by a specified provider and due a provider until the matter in dispute between the provider and the Commissioner agent is resolved.

(54) Title XVIII--Title XVIII (Medicare) of the Social Security Act.

(55) Title XIX--Title XIX (Medicaid) of the Social Security Act.

(56) Title XX--Social Services Block Grant of the Social Security Act.

(57) Waste--Practices that spend carelessly and /or allow inefficient use of resources, items, or services.

---

**Source Note:** The provisions of this §371.1601 adopted to be effective January 9, 2005, 29 TexReg 12128

# APPENDIX

## Tab 2

## 1 Tex. Admin. Code § 371.1603 (eff. 1/9/2005)

<<Back

# Historical Rule for the Texas Administrative Code

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 1 | FRAUD OR ABUSE AND ADMINISTRATIVE ENFORCEMENT INVOLVING MEDICAID AND OTHER HEALTH AND HUMAN SERVICES PROGRAMS |
| RULE §371.1603 | Overview of Inspector General Responsibility Relating to Investigation, Referral and Administrative Enforcement in Medicaid and Other Health and Human Services Programs |
| Repealed Date: | **10/14/2012** |

(a) The Office of Inspector General (the Inspector General) is responsible for minimizing the opportunity for provider or contractor fraud, abuse, overpayments, and waste within the Medicaid and other HHS programs, whether the fraud or abuse was committed by providers, recipients, or other persons and for protecting recipients of federally funded programs from unsafe practitioners.

(b) The Inspector General may take appropriate action as authorized in subchapters A, B, and G of this chapter to protect recipients and the programs when persons have committed, or are suspected of committing, fraud or abuse. Such actions may include administrative actions and/or sanctions and referral to appropriate law enforcement agencies for criminal investigation.

(c) The Inspector General may take action against any provider or person associated with any HHS program or service as it relates to fraud, abuse, overpayments, waste, or program violations that rise to the level of fraud, abuse, or waste of those HHS programs or services, or for any of the violations for which the Inspector General may take action against providers or persons associated with the Medicaid program, as described in this subchapter.

(d) The Inspector General may take an administrative action, sanction, impose damages or penalties, or abate, deny, or postpone a decision to enroll a provider or person in the Medicaid program, based upon an investigation or finding in the Medicaid or other HHS programs.

(e) The Inspector General may also take an administrative action, sanction, impose damages or penalties, or abate, deny, or postpone a decision to enroll a provider or person in a Medicaid program or for a Medicaid service, based upon the investigative findings related to an investigation or finding of a provider or person or their principals or affiliates within a Medicaid or HHS program or receiving a Medicaid or HHS service.

(f) Not all actions resulting in overpayment to a provider are necessarily fraudulent. Some circumstances could result in the referral of a Medicaid provider to the Attorney General's Medicaid Fraud Control Unit or Civil Fraud Division. Other circumstances could result in administrative action rather than referral for judicial action or criminal prosecution. These actions, or sanctions, could range from an educational notice to the provider explaining their error, to contract cancellation and/or exclusion from

participation in the Medicaid (Title XIX), Title XX, and Title V programs.

(g) Investigation. When the Inspector General receives information regarding a possible program violation either from its review systems or through a complaint or referral filed by another agency or person, the Inspector General initiates an investigation. After completing its preliminary investigation, the Inspector General may, at its discretion, initiate settlement discussions with the person who is the subject of the investigation. If the matter cannot reasonably be settled or if the Inspector General determines that further investigation is required before the propriety of settlement or other enforcement can be evaluated, the Inspector General may conduct a full investigation of the case.

(h) An Inspector General case remains open until the investigation is complete, the case is reasonably settled, the Inspector General makes an administrative determination that closes the case for lack of evidence or appropriate administrative enforcement, and/or legal action is completed. At any time during the investigative or enforcement process, the Inspector General maintains the authority to settle administrative cases, impose payment holds, or request the Office of the Attorney General to obtain an injunction to prevent a person from disposing of an asset identified by the OIG as potentially subject to recovery by the OIG due to the person's fraud or abuse.

(i) Referral for Legal Action. The Inspector General refers all cases of suspected Medicaid fraud or patient abuse or neglect to the Medicaid Fraud Control Unit (MFCU) or the Civil Fraud Division (CFD) at the Office of the Attorney General (OAG) for investigation regarding the need for criminal or civil prosecution. If the MFCU fails to act on a matter within 30 days of receiving a referred case from the Inspector General or returns a case to the Inspector General without initiating prosecution, the Inspector General may refer the matter to an appropriate prosecuting authority or a collection agency. Nothing in these rules is intended to prevent concurrent administrative, civil, and/or criminal investigation and action regarding suspected fraud or patient abuse or neglect. Subject to express statutory limitations, the Inspector General may proceed with recoupment and/or administrative enforcement concurrently with judicial prosecution of the same matter.

(j) Administrative Enforcement. Based upon the nature and severity of the program violation, the provider's previous history of violations, evidence of the provider's knowledge and intent, and other relevant factors, the Inspector General may select enforcement measures from the three categories set forth below and in more detail at Divisions 3 - 6 of this subchapter.

  (1) Administrative Actions--The Inspector General may impose an administrative action to provide safeguards for future compliance or refer a matter for additional review or enforcement; e.g., education, referral to licensing board, referral for judicial action. The imposition of administrative actions does not give rise to due process notice or hearing requirements.

  (2) Sanctions--Sanctions may directly impact a person's ability to keep or receive payments and/or the person's participation in the Medicaid program; e.g., exclusion from program participation, recoupment of overpayments, or payment hold. Imposition of sanctions triggers due process notice and hearing requirements.

  (3) Damages and Penalties (formerly "Civil Monetary Penalties")--The imposition of damages or penalties for program violations (e.g., false claims, specified managed care acts or omissions) triggers due process notice and hearing requirements.

**Source Note:** The provisions of this §371.1603 adopted to be effective January 9, 2005, 29 TexReg 12128

# APPENDIX

## Tab 3

## 1 TEX. ADMIN. CODE § 371.1613 (eff. 1/9/2005)

**<<Back**

# Historical Rule for the Texas Administrative Code

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 2 | MEDICAID PROGRAM AUTHORITY AND VIOLATIONS |
| RULE §371.1613 | Program Authority |
| Repealed Date: | **10/14/2012** |

When established by prima facie evidence, all Medicaid and other HHS program violations (defined at §371.1617 of this subchapter) are subject to administrative enforcement and/or criminal or other appropriate judicial action. The method of enforcement reflects the evidence of the intent of the non-compliant provider or person. Unintentional program violations are subject to administrative actions and sanctions. Violations the provider or person knew or should have known were false and involved program or patient abuse or fraud are also subject to administrative monetary penalties, as well as criminal or other judicial prosecution. In accordance with 42 Code of Federal Regulations (CFR) §455.13(a), the Inspector General has established methods and criteria for identifying suspected fraud cases. Criteria to establish suspected fraud is based upon evidence of intentional deception or misrepresentation or upon a program violation or violation of other governing statutory law, including without limitation neglect, that appears to have been committed intentionally or with knowing and willful disregard for program rules.

**Source Note:** The provisions of this §371.1613 adopted to be effective January 9, 2005, 29 TexReg 12128

Next Page          Previous Page

HOME    TEXAS REGISTER    TEXAS ADMINISTRATIVE CODE    OPEN MEETINGS

# APPENDIX

## Tab 4

## 1 TEX. ADMIN. CODE § 371.1643 (eff. 1/9/2005)

# Texas Register

| TITLE 1 | ADMINISTRATION |
|---|---|
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 4 | ADMINISTRATIVE SANCTIONS |
| RULE §371.1643 | Use of Sanctions |
| ISSUE | 12/31/2004 |
| ACTION | Final/Adopted |

[Preamble]                                                    No Rule Available

---

(a)In response to program violations in the Medicaid program, including but not limited to any substantiated reason specified in §371.1617 of this subchapter, the Inspector General may impose against a provider or person, as defined in §371.1601 of this subchapter, any one or combination of sanctions specified in subsection (c) of this section.

(b)The imposition of an administrative action is not prerequisite to the use of a sanction, although sanctions may be imposed in conjunction with other administrative enforcement measures.

(c)Administrative sanctions include:

  (1)exclusion from participation in the Titles V, XIX (Medicaid), and XX programs for a specified period of time, permanently, or indefinitely; (In this subchapter, exclusion from Medicaid automatically precipitates concurrent exclusion from Titles V, and XX.)

  (2)suspension of payments (payment hold) to a provider in Titles V, XIX (Medicaid), XX, and CHIP programs;

  (3)recoupment of overpayments in Titles V, XIX (Medicaid), and XX programs;

  (4)recoupment of overpayments projected from a sampling process in Titles V, XIX (Medicaid), and XX programs;

  (5)restricted reimbursement for a specified period of time or indefinitely in Titles V, XIX (Medicaid), and XX programs--Specific services will not be reimbursed to an individual provider during the time the provider is on restricted reimbursement; however, other services, as determined by the Inspector General, will be reimbursed;

  (6)cancellation of provider contract or provider agreement in Titles V, XIX (Medicaid), and XX, programs; and

  (7)debarment or suspension under the authority of the Code of Federal Regulations.

(d)Providers or Persons Subject to Sanctions.

  (1)Providers or persons furnishing services or items directly or indirectly for the Medicaid program are subject to sanctions for violations of the program;

  (2)Any affiliates of a provider or person as specified in subsection (d) of this section.

  (3)Providers or persons in violation of any of the violations set forth in Subchapter G of this chapter; and

  (4)Providers or persons committing other program violations for which the Inspector General determines that sanctions are appropriate.

(e)Affiliate Relationship.

  (1)A provider or person, as defined in §371.1601 of this subchapter, is deemed to have an affiliate relationship with another provider or person, if they:

    (A)have a direct or indirect ownership interest (or any combination thereof) of 5% or more in the entity;

    (B)are the owner of a whole or part interest in any mortgage, deed of trust, note or other obligation secured (in whole or in part) by the entity or any of the property assets, thereof, in which whole or part interest is equal to or exceeds 5% of the total property and assets of the entity;

    (C)are an officer or director, if organized as a corporation;

    (D)are a partner, if organized as a partnership;

    (E)are an agent or consultant;

    (F)are a managing employee, that is, a person (including a general manager, business manager, administrator or director) who exercises operational or managerial control over a person or part thereof, or directly or indirectly conducts the day-to-day operations of the entity or part thereof;

    (G)are providers or person(s) associated with one another so that any one of them, directly or indirectly, controls or has the power to control another in whole or in part;

    (H)share any of the following: e.g. tax identification numbers, social security numbers, bank accounts, telephone number, business location. (This is not an all inclusive list); or

    (I)was formerly described in subsection (d)(1) of this section, but is no longer described, because of a transfer of ownership or control interest to an immediate family member or a member of the person's household as defined in subsection (d)(3) of this section, in anticipation of, or following a conviction, assessment of damages or penalties under §371.1721 et seq. of this subchapter, or imposition of a sanction.

  (2)The Inspector General may sanction an affiliate of a provider or person, as defined in §371.1601 of this subchapter, if a provider or person with an affiliate relationship:

    (A)has been convicted of a criminal offense related to the Medicaid or Medicare program or as described in §§1128(a) and 1128(b)(1), (2), or (3) of the Social Security Act, or of an offense related to

another HHS program;

(B)has had damages and penalties or assessments imposed under §371.1721 et seq. of this subchapter or §1128A of the Social Security Act; or

(C)has been excluded from participation in Medicaid, Medicare, or any state's health care program.

(3)For purposes of this section, the following terms are defined as:

(A)Agent means any person who has express or implied authority to obligate or act on behalf of a provider or person, as defined in §371.1601 of this subchapter.

(B)Immediate family member means, a person's husband, wife, or spouse; natural or adoptive parent; child or sibling; stepparent, stepchild, stepbrother or stepsister; father-, mother-, daughter-, son-, brother- or sister-in-law; grandparent or grandchild; or spouse of a grandparent or grandchild.

(C)Indirect ownership interest includes an ownership interest through any other entities that ultimately have an ownership interest in the provider or person in issue. (For example, an individual has a 10 percent ownership interest in the entity at issue if they have a 20 percent ownership interest in a corporation that wholly owns a subsidiary that is a 50 percent owner of the entity in issue.)

(D)Member of household means, with respect to a person, with whom they are sharing a common abode as part of a single-family unit, including domestic employees, partners, and others who live together as a family unit.

(E)Ownership interest means an interest in the capital, the stock or the profits of the entity or any mortgage, deed, trust or note, or other obligation secured in whole or in part by the property or assets of the person.

(f)Failure to Grant Immediate Access.

(1)The Inspector General may sanction any provider or person, including managed care organizations and their subcontractors, as defined in §371.1601 of this subchapter, that:

(A)fails to grant immediate access upon reasonable request to:

(i)the Inspector General;

(ii)the Attorney General's Medicaid Fraud Control Unit or Civil Fraud Division;

(iii)any state or federal agency authorized to conduct compliance, regulatory, or program integrity functions on the provider, person, or the services rendered by the provider or person; or

(iv)any agent or consultant of any agency or division within an agency formerly described in subparagraph (A) of this paragraph;

(B)fails to allow the Inspector General or any other federal or state agency, division, agent or consultant as described in subparagraph (A) of this paragraph to conduct any duties that are necessary to the performance of their statutory functions;

(C)fails to provide to the Inspector General or any other federal or state agency, division, agent or consultant as described in subparagraph (A) of this paragraph, upon request and as requested, for the

purpose of reviewing, examining, and securing custody of records, access to, disclosure of, and custody of copies or originals of any records, documents, or other requested items, as determined necessary by the Inspector General or those specified in subparagraph (A) of this paragraph to perform statutory functions, any records the provider or person is required to maintain; any records necessary to verify items or services furnished and delivered under Medicaid, any other HHS program, or any state health care program to determine whether payment for those items or services is due or was properly made. This includes, without limitation: clinical medical patient records, other records pertaining to the patient, any other records of services provided to Medicaid or other HHS program recipients and payments made for those services, documents related to diagnosis, treatment, service, lab results, charting, billing records, invoices, documentation of delivery of items, equipment, or supplies, and radiographs and all requirements of §371.1617(a)(2) of this subchapter. It also includes the business and accounting records with backup support documentation, statistical documentation, computer records and data, patient sign in sheets, and schedules. Accessible information must include information that is necessary for the agencies specified in this paragraph to perform statutory functions. It includes those elements described in §371.1601 of this subchapter (definition of "failure to provide immediate access").

(2) For purposes of paragraph (1)(A) and (1)(B) of this subsection, the term:

(A)Failure to grant immediate access means the failure to grant access at the time of a reasonable request.

(B)Reasonable request means a request made by a properly identified agent of the Inspector General or another state or federal agency identified in paragraph (1)(A) of this subsection, during hours that the business or premises is open for business.

(3)For purposes of paragraph (1)(C) of this subsection, the term Failure to grant immediate access means:

(A)The failure to produce or make available records within 24 hours of the request for production, for the purpose of reviewing, examining, and securing custody of records upon reasonable request, as determined by the requestor, Inspector General and all other state and federal agencies, except where the Inspector General or another state or federal agency identified in paragraph (1)(A) of this subsection reasonably believes that requested documents are about to be altered or destroyed or that the request may be completed at the time of the request and/or in less than 24 hours;

(B)The failure to provide access to requested records at the time of the request, for the purpose of reviewing, examining, and securing custody of records upon reasonable request, when the Inspector General or another state or federal agency identified in paragraph (1)(A) of this subsection, has reason to believe that requested documents are about to be altered or destroyed or the request, in the opinion of the Inspector General or the other requestor, determined that the request could be met at that time and/or in less than 24 hours.

(C)Reasonable request means a request for records or documents made by a properly identified agent of the Inspector General or another state or federal agency identified in paragraph (1)(A) of this subsection, during hours that the business or premises is open for business.

(4)In most instances, providers or persons required to produce records or documents will be required to complete a Records Affidavit, Business Records Affidavit, Evidence Receipt, and/or Patient Record Receipt, at the direction of the requestor, and to attach these documents to the records provided.

(5)As directed by the requestor, and in accordance with the provisions of subsection (e) of this section,

the provider or person will relinquish custody of the records and documents and the requestor will take custody of the records and remove them from the premises. If the requestor should allow longer than "at the time of the request" to produce the records, the provider or person will be required to produce all records completed, at the time of completion or at the end of each day of production, as directed by the requestor, to the requestor who will take custody of the records. Failure to comply with the provisions of this part will result in a finding of Failure to grant immediate access.

(6)Nothing in this section shall in any way limit access otherwise authorized under State or Federal law.

(7)Exclusion.

(A)A program exclusion imposed against a provider or person under this section may be for a period equal to the sum of:

(i)The length of the period during which the immediate access was not granted, and

(ii)An additional period of up to one year.

(B)The exclusion of a provider or person may be for a longer period than the period in which immediate access was not granted based on consideration of the following factors:

(i)The impact of the failure to grant the requested immediate access on Medicaid or other HHS program;

(ii)The circumstances under which such access was refused; and

(iii)Whether the provider or person has a documented history of criminal, civil, or administrative wrongdoing. The lack of any prior record is to be considered neutral.

(C)For purposes of this section, the length of the period in which immediate access was not granted will be measured from the time the request is made.

(D)The exclusion will be effective as of the date immediate access was not granted.

(8)The Inspector General will work with the provider or person, within the limitations necessitated by the circumstances of the investigative case, to provide the provider or person, within a reasonable time, as determined by the Inspector General, and at the provider or person's expense, with copies of the records necessary for the provider to continue their immediate business. Nothing herein shall be interpreted to impede the Inspector General's or other requestor's ability to obtain all records and documents as required and to which the requestor is entitled under this section.

This agency hereby certifies that the adoption has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 20, 2004

**TRD-200407413**

Steve Aragón

Chief Counsel

Texas Health and Human Services Commission

Effective date: January 9, 2005

Proposal publication date: June 18, 2004

For further information, please call: (512) 424-6900

---

Next Page     Previous Page

Re-Query Register    Back to List of Records

HOME | TEXAS REGISTER | TEXAS ADMINISTRATIVE CODE | OPEN MEETINGS

**APPENDIX**

**Tab 5**

**1 TEX. ADMIN. CODE § 371.1647 (eff. 1/9/2005)**

# Texas Register

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 4 | ADMINISTRATIVE SANCTIONS |
| RULE §371.1647 | Notice of Sanction |
| ISSUE | 12/31/2004 |
| ACTION | Final/Adopted |

[Preamble]                                                                No Rule Available

(a)The Inspector General provides written notice of a potential sanction(s) by certified mail with return receipt or by facsimile transmission with confirmation page. A recoupment requires both an initial written notice of potential sanction and a subsequent written notice of final sanction; therefore, any additional sanctions of any type in the same notice letter with a recoupment will require both notice letters. Additional provisions regarding notice of an exclusion are provided in §371.1649 of this subchapter. If there is no specific requirement in Subchapter G for a written notice of a potential sanction for an individual specific situation, the only sanction notice letter required is the notice of final sanction.

(b)Potential sanction. The written notice of potential sanction includes:

  (1)a description of the potential sanction;

  (2)the basis of the potential sanction;

  (3)the effect of the potential sanction;

  (4)its duration (duration could be indefinite or until a certain event occurred), if appropriate; and

  (5)if the sanction is an exclusion, the notice must contain a description of the method the provider uses to request reinstatement, unless the exclusion is permanent.

(c)In the case of a recoupment, a statement of the provider's or person's right to request a formal appeal hearing of the potential sanction is not provided in the initial notice letter, since this is not a final sanction. A statement of the provider's or person's right to request a formal appeal hearing of the final sanction will be subsequently provided with the final written notice of the Inspector General's final overpayment determination.

(d)Final sanction. The written notice of final sanction includes:

  (1)a description of the final sanction;

(2)the basis of the final sanction;

(3)the effect of the final sanction;

(4)its duration (duration could be indefinite or until a certain event occurred), if appropriate;

(5)a statement of the provider's or person's right to request a formal appeal hearing of the sanction; and

(6)if the sanction is an exclusion, the notice must contain a description of the method the provider or person uses to request reinstatement, unless the exclusion is permanent.

(e)The sanctions will take effect in the following manner:

(1)Recoupment--The provider or person will receive a notice of a potential sanction to impose recoupment. The provider or person may request an informal review, to informally discuss the issues and allow the provider or person an opportunity to provide information they deem appropriate. Subsequently, the Inspector General will make a final determination regarding the amount to be recouped. Upon that determination, the Inspector General will send final determination and notice of recoupment to the provider or person.

(2)Payment hold--A payment hold on payments of future claims submitted for reimbursement will be imposed, without prior notice, as specified in §371.1703(b) of this subchapter. The provider will be notified of the payment hold not later than the fifth (5th) working day after the date the hold is imposed. The payment hold will remain in effect until all issues regarding the provider's billing practices are finally resolved, including all litigation and judicial processes.

(3)Restricted reimbursement--The provider will receive final notice of intent to impose restricted reimbursement unless the provider meets one of the exception criteria enumerated in §371.1649 and §371.1651 of this subchapter. The provider may request an informal review and/or an administrative appeal hearing as described in paragraph (1) of this subsection.

(4)Exclusion--The provider or person will receive a notice of potential imposition of exclusion unless the provider meets one of the exception criteria enumerated in §371.1649 and §371.1651 of this subchapter. The provider or person may request an informal review, to informally discuss the issues and allow the provider or person an opportunity to provide information they deem appropriate. This process will occur before the Inspector General submits its final notice of exclusion to the provider or person. At that time, the provider or person may request an administrative appeal hearing as described in §371.1669 of this title.

(5)Cancellation of contract or provider agreement--The provider or person will receive a notice of potential cancellation of contract or provider agreement unless the provider meets one of the exception criteria enumerated in §371.1649 and §371.1651 of this subchapter. The provider may request an informal review as described in paragraph (1) of this subsection. This process will occur before the Inspector General submits its final notice of cancellation of contract or provider agreement to the provider or person. If a provider or person is excluded who also has a contract or provider agreement, prior notice of the cancellation of contract or provider agreement is not a requirement, since the scope and effect of the exclusion, as specified in §371.1673 of this subchapter, does not allow that person to participate in Titles XIX, V, and XX programs. The contract or provider agreement in that instance would be cancelled effective the effective date of the exclusion.

This agency hereby certifies that the adoption has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 20, 2004

**TRD-200407413**

Steve Aragón

Chief Counsel

Texas Health and Human Services Commission

Effective date: January 9, 2005

Proposal publication date: June 18, 2004

For further information, please call: (512) 424-6900

---

Next Page          Previous Page

Re-Query Register          Back to List of Records

HOME | TEXAS REGISTER | TEXAS ADMINISTRATIVE CODE | OPEN MEETINGS

# APPENDIX

## Tab 6

## 1 TEX. ADMIN. CODE § 371.1667 (eff. 1/9/2005)

[<<Back](#)

# Historical Rule for the Texas Administrative Code

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 4 | ADMINISTRATIVE SANCTIONS |
| RULE §371.1667 | Due Process for Administrative Sanctions |
| **Repealed Date:** | **10/14/2012** |

(a) The Inspector General affords, to any provider or person against whom it imposes sanctions, all administrative and judicial due process remedies applicable to administrative sanctions.

(b) The person is also offered, in the sanction notice letter, an opportunity to request an informal review of the imposition of sanction. The provider or person is given an opportunity to submit documentary evidence and written argument concerning whether the sanction is warranted and other related issues. A submission of documentary evidence or written argument does not guarantee it will be sufficient to rise to the level of acceptable evidence or argument. If, upon review by the Inspector General, the documentary evidence or written argument remains unacceptable, the Inspector General may proceed with imposition of administration sanctions. The provider or person may choose to request an informal review, a formal appeal hearing, or both. If both an informal review and formal appeal hearing are chosen, the formal appeal hearing and all pertinent discovery, prehearing conferences, and all other issues and activities regarding the formal appeal hearing will be abated until all informal review discussions have ended without settlement or resolution of the issues. In certain situations, the informal review will not be offered.

(c) When the exclusion is based on the existence of a criminal conviction, a civil fraud finding, a civil judgment imposing liability by federal, state, or local court, a determination by another government agency or board, any other prior determination, or provisions within a settlement agreement, the basis for the underlying determination is not reviewable and the individual or entity may not collaterally attack the underlying determination, either on substantive or procedural grounds, in an administrative appeal.

**Source Note:** The provisions of this §371.1667 adopted to be effective January 9, 2005, 29 TexReg 12128

Next Page          Previous Page

# APPENDIX

## Tab 7

## 1 TEX. ADMIN. CODE § 371.1669 (eff. 1/9/2005)

[<<Back](#)

# Historical Rule for the Texas Administrative Code

| | |
|---|---|
| TITLE 1 | ADMINISTRATION |
| PART 15 | TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| CHAPTER 371 | MEDICAID AND OTHER HEALTH AND HUMAN SERVICES FRAUD AND ABUSE PROGRAM INTEGRITY |
| SUBCHAPTER G | LEGAL ACTION RELATING TO PROVIDERS OF MEDICAL ASSISTANCE |
| DIVISION 4 | ADMINISTRATIVE SANCTIONS |
| RULE §371.1669 | Notice of Appeal |
| Repealed Date: | **10/14/2012** |

(a) To appeal a final sanction imposed by the Inspector General, a provider or person shall file a written request for appeal with the Inspector General within twenty (20) calendar days of the date of the person's receipt of the notice of final sanction, unless specified otherwise in other sections of this subchapter. The Inspector General will then forward the notice of appeal to the Commission's Office of General Counsel for docketing. If an informal review has also been requested, the appeal will be abated until all efforts to resolve or settle the sanction have been unsuccessful. At the conclusion of the informal review process, the Inspector General will then forward the notice of appeal to the Commission's Office of General Counsel for docketing.

(b) The letter requesting an appeal hearing or informal review will contain a statement as to the specific issues, findings, and/or legal authority in the notice letter with which the sanctioned provider or person disagrees, and the basis for their contention that the specific issues or findings and conclusions are incorrect. The request for a hearing must be made in writing to the Manager of Sanctions. The request must be signed by the provider or person sanctioned or by their attorney and sent by certified mail to arrive in Sanctions by the filing deadline. No other person or party may appeal for or on behalf of the sanctioned provider or person.

**Source Note:** The provisions of this §371.1669 adopted to be effective January 9, 2005, 29 TexReg 12128

Next Page          Previous Page

HOME | TEXAS REGISTER | TEXAS ADMINISTRATIVE CODE | OPEN MEETINGS